UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOANN KING,                          :     CIVIL NO. **1:04-CV-2291**
                                     :
            Plaintiff                :     (Judge Caldwell)
                                     :
       v.                            :     (Magistrate Judge Smyser)
                                     :
JO ANNE B. BARNHART,                 :
Commissioner of                      :
Social Security,                     :
                                     :
            Defendant                :

## REPORT AND RECOMMENDATION

The plaintiff has brought this civil action under the authority of 42 U.S.C. § 405(g) to obtain judicial review of the decision of the Commissioner of Social Security denying the claim of the plaintiff for Social Security disability insurance benefits.

On January 31, 2003, the plaintiff, Joann King, applied for disability insurance benefits. She claimed that she became disabled on March 27, 1992, as the result of Tourette's syndrome and depression. The claim was denied initially and on

reconsideration.  The plaintiff filed a request for a hearing,
and a hearing was held before an administrative law judge (ALJ)
on April 24, 2004.

        At this hearing the plaintiff and a vocational expert
testified.   Tr. 322-353.

        In her testimony, the plaintiff recounted her work
history.  She had worked as a bank teller, as a receptionist,
as a deli-meat counter clerk in a grocery store, and as a
babysitter.  She has a high school degree and approximately one
and a half years of college.  She stated that the problematic
symptoms caused by her impairments are manic depressive
symptoms, nervousness, mood swings and facial tics.  She also
has asthma and migraine headaches.  Her asthma is controlled by
her medication.  She has not required emergency room visits or
hospitalization in the previous twenty-four months related to
her asthma.

Her migraine headaches cause her to lose her peripheral vision and to become speech impaired.  These headaches occur two to three times a month and last for three to four days.

Her medications are Rispedal, Seroquel, Paxil, and Lipitor.  Tr. 332.  Her medications help her to get relief from her symptoms.  Tr. 334, 337.  She gets drowsy and dizzy as a side-effect of her medications.  She is discussing treatment options for her migraines with her doctor.  Her physician is considering alternative migraine treatments, rather than medications because she has a substance abuse history. Tr. 339.  Her headaches have been controlled with daily doses of caffeine and aspirin.  Tr. 340.  Her Tourette's symptomatology consists mostly of "vocal and facial tics." Tr. 337, 338.

She stated that when she is "manic" she goes days without sleeping, but she normally sleeps eight hours every night.  Tr. 342.  She is able to care for her personal hygiene. She shares cooking chores with her husband, and she cleans, mops and brooms the house, uses the vacuum cleaner, does

3

laundry and makes the beds.  She helps her two children with homework and she attends school meetings.  Tr. 344.  She stated that she can no longer ride horses or take long walks. Tr. 344.

The plaintiff testified that she had recently finished an inpatient rehabilitation program to treat her drug addiction.  She plans to seek outpatient treatment with another facility since the current one will not prescribe her medications and insists on treating her with only counseling therapy.  Tr. 348.

The vocational expert testified that given Ms. King's vocational profile and the limitations of a hypothetical person described by the ALJ, the person could not perform her past relevant work but could perform some other jobs.

On July 21, 2004, the ALJ issued a decision denying the plaintiff benefits. Tr. 12-26. The plaintiff requested review of the ALJ's decision to the Appeals Council. Tr. 10.  The Appeals Council denied the plaintiff's request for review.

4

Tr. 7-9.  Thus, the ALJ's decision stood as the final decision
of the Commissioner.

The plaintiff filed her complaint with this court on
October 18, 2004. The defendant filed an answer to the
complaint and a copy of the administrative record on April 8,
2005. Pursuant to Local Rules 83.40.4 and 83.40.5, the
plaintiff filed her brief on May 10, 2005, and the defendant
filed her brief on June 7, 2005. No reply brief has been filed.

If the Commissioner's decision is supported by
substantial evidence it must be affirmed. 42 U.S.C. § 405(g).
Substantial evidence means "such relevant evidence as a
reasonable mind might accept as adequate to support a
conclusion." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir.
1999)(quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir.
1995).  Substantial evidence is more than a mere scintilla of
evidence but less than a preponderance.  *Brown v. Bowen*, 845
F.2d 1211, 1213 (3d Cir. 1988).

A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).  However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966).

To facilitate review of the Commissioner's decision under the substantial evidence standard, the Commissioner's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id*. at 706-707.  In determining if the Commissioner's decision is supported by

substantial evidence the court must scrutinize the record as a whole. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

The Commissioner has promulgated regulations creating a five-step process to determine if a claimant is disabled.  The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and, (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §404.1520 and 20 C.F.R. §416.920.

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that she is unable to engage in her past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education,

7

and work experience can perform.  *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

In this case the ALJ determined that the plaintiff has not engaged in substantial gainful activity since the alleged onset date, that she has impairments that are severe, that her impairments do not meet or equal any listed impairments, and that she is not able to perform her past relevant work.  The ALJ further determined that the plaintiff has the residual functional capacity[1] to perform medium work and to perform jobs identified by the vocational expert.

On the basis of these findings, the ALJ found the plaintiff not to be disabled.

The plaintiff alleged that she became disabled on March 27, 1991.  Tr. 47.  Her last date insured for disability purposes was December 31, 1999.  Therefore, for purposes of

---

1.  "Residual Functional Capacity" is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  *Burnett v. Commissioner of Social Security Adm.,* 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)).

disability benefits the plaintiff had to prove that she became
disabled before her last date insured.  Tr. 15-16.  The ALJ
found that the evidence submitted by the plaintiff for the
period prior to her last date insured did not establish
limitations on the plaintiff's physical or mental ability to
perform basic work activities.  Tr. 17.  There were physician's
notes regarding the plaintiff's complaints of headaches in 1994
and 1995 and a CT scan of the head performed in January of
1995, which was normal.  Tr. 105-108.  There were also hospital
records from 1998 when the plaintiff gave birth to her
daughter.  Tr. 109.  There was not medical evidence of any
mental health treatment prior to the plaintiff's last date
insured.  A state agency psychologist opined that the plaintiff
had no medically determinable impairment from March 15, 1992,
through March 31, 1999.  Tr. 193-206.  Therefore, the ALJ
stopped the sequential evaluation inquiry, as described above,
at step two for the period ending on March 31, 1999, for
purposes of disability benefits, and found that the plaintiff
did not have a severe impairment prior to her last date insured
for DIB purposes.

For SSI purposes, the ALJ considered the plaintiff's
SSI application as of the filing date, January of 2003.
Tr. 16.  The ALJ found that the plaintiff had depression,
substance abuse, asthma and obesity.  These impairments were
found to be medically determinable severe impairments under the
regulations.  Tr. 17.  The ALJ found that the plaintiff's
Tourette's and migraine headaches did not significantly impact
the plaintiff's ability to engage in substantial gainful
activity.  Tr. 17.

The ALJ found that the plaintiff's medically
determinable impairments are severe.  The ALJ found that the
impairments do not meet or equal a listed impairment.

The ALJ considered the plaintiff's impairments under
listings 3.03 (Asthma), 12.04 (Affective Disorders), and 12.09
(Substance Abuse Disorder).  Tr. 17.

The first argument raised by the plaintiff here is that
there is substantial evidence that the plaintiff has a severe
medically determinable impairment.  In that the ALJ found her

10

to have severe medically determinable impairments, Tr. 25, this argument requires no discussion.  In the body of the argument, moreover, the plaintiff argues that a treating physician's opinion was improperly afforded inadequate weight by the ALJ, but provides no particular record reference or details.

The plaintiff's other argument is that the ALJ's credibility determination, adverse to the plaintiff, is not supported by substantial evidence.  In her argument, the plaintiff asserts that "it is the position of the plaintiff that no person objectively reviewing the evidence could possibly conclude that the plaintiff does not suffer from severe medically determinable impairments based upon the medical evidence of record."  Since the ALJ found that the plaintiff does suffer from severe medically determinable impairments, there is no argument here to address.

Apart from addressing the plaintiff's arguments, we have reviewed the decision as a whole to determine whether it is supported by substantial evidence.

The plaintiff's past relevant work was light and
unskilled.  Tr. 350.  The ALJ found a capacity for medium work:

> The undersigned finds the claimant retains the
> residual functional capacity for lifting 50
> pounds occasionally and 25 pounds frequently,
> standing or walking 6 hours in an 8 hour day,
> sitting 6 hours in an 8 hour day, avoiding
> concentrated exposure to fumes, odors, dust,
> gases, poor ventilation, and hazards such as
> machinery and heights.  The claimant is
> moderately limited in ability to maintain
> attention and concentration for extended
> periods, ability to sustain an ordinary routine
> without special supervision, and work in
> coordination with and in close proximity to
> others without being distracted by them.  She
> is moderately limited in ability to respond
> appropriately to changes in work setting,
> ability to travel in unfamiliar places or use
> public transportation, ability to set realistic
> goals or make plans independent of others, and
> ability to complete a normal workday/week
> without interruptions from psychologically
> based symptoms and to perform at a consistent
> pace without an unreasonable number and length
> of rest periods.  The claimant would thus
> require jobs which are unskilled, low stress
> (defined as only occasional changes in the work
> setting); only occasional interaction with the
> general public and coworkers; jobs that provide
> close supervision, defined as a supervisor
> checking the work several times in the work
> day, work dealing with objects rather than with
> people; and jobs which require very little
> judgment as part of the job.

Tr. 20.  The ALJ provides no reference to the evidentiary basis
for this finding.  No exertional capacity was identified in

12

hypothetical questions to the vocational expert.  Tr. 350-351.

The vocational expert stated that the hypothetical person could

not do the plaintiff's past work.  Tr. 351.  The vocational

expert did not state the exertional demand level of the jobs he

said the ALJ "can consider" for the hypothetical person.

Tr. 351.  The ALJ's analysis stated:

> In applying the fourth step of the sequential
> evaluation process, consideration must be given
> to the question of whether the claimant retains
> the residual functional capacity to return to
> her past relevant work.  The vocational expert
> assessed the claimant's job as a deli worker
> and housekeeper to be light exertional,
> unskilled work, and as a receptionist to be
> sedentary exertional, unskilled work.  The
> Administrative Law Judge finds no conflict
> between the opinion of the vocational expert
> and The United States Department of Labor
> *Dictionary of Occupational Titles*.  The
> vocational expert testified that an individual
> with the same specific residual functional
> capacity as the claimant would be unable to
> perform the duties of the cited jobs.  The
> undersigned concurs with the opinion of the
> vocational expert and concludes that the
> claimant is unable to return to any of her past
> relevant work.
>
> Once the claimant has established that she has
> no past relevant work or cannot perform her
> past relevant work because of her impairments,
> the burden shifts to the Social Security
> Administration to show that there are other
> jobs existing in significant numbers in the
> national economy that the claimant can perform,

consistent with her residual functional
capacity, age, education, and work experience.

The claimant's age, education and vocationally
relevant past work experience, if any, must be
viewed in conjunction with the Medical-
Vocational Guidelines of Appendix 2 of Subpart
P of the Regulations, which contain a series of
rules that may direct a conclusion of either
"disabled" or "not disabled" depending upon the
claimant's residual functional capacity and
vocational profile.

Born on August 24, 1971, the claimant is
currently 32 years old.  This is defined in the
regulations as a younger individual (20 CFR
§§ 404.1563 and 416.963).  She has a high
school (or high school equivalent) education
and has no transferable skills from any past
relevant work and/or transferability of skills
is not an issue in this case.

The Medical-Vocational Guidelines are used as a
framework for the decision when the claimant
cannot perform all of the exertional demands of
work at a given level of exertion and/or has
any nonexertional limitations.  Based upon the
claimant's residual functional capacity, she is
capable of performing a significant range of
medium work as defined in 20 CFR §§ 404.1567
and 416.967.

Tr. 23.  This analysis does not appear to hold up.  The ALJ

appears to have found that the plaintiff had lost her capacity

for certain light and sedentary jobs but to have then found,

without demonstrating that some factor other than exertional

demand was at the heart of the analysis, that plaintiff retains

a residual functional capacity for a significant range of medium work.  That is, on the face of it, like finding that the plaintiff can not lift 20 pounds but can lift 50.

Another area of questionable analysis to support this determination lies in the ALJ's rejection of a Listing 12.04 or 12.09 impairment.  The regulatory criteria for the two listings are set forth at Tr. 18, in the ALJ's decision.  Listing 12.09 (Substance Addiction Disorders) provide in part:

> The required level of severity for these disorders is met with the requirements for the listing, or listings, of the resultant symptoms are satisfied.  Affective disorder, in this case, is the applicable criteria.

Addressing and acknowledging the presence of evidence of "repeated episodes of decomposition of extended duration," however, the ALJ found, and found to be dispositive, that "the claimant has shown no episodes of decomposition not directly commingles [sic] with drug abuse."  Tr. 19.  The regulations, however, appear to treat decomposition as a potentially disabling condition whether caused by drug addiction or another mental disorder.

        Despite these areas of uncertainty in the reasoning
process of the decision, we conclude that the decision is
supported by substantial evidence.  It is recommended that the
appeal of the plaintiff be denied.


                                    _/s. J. Andrew Smyser_
                                     J. Andrew Smyser
                                     Magistrate Judge

DATED: July 5, 2005.